FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 01 2007 ★
BROOKLYN OFFICE

D1F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
CARL MADISON,
                      Petitioner,

   -against-

JOHN BURGE, Superintendent of Elmira Prison,

                      Respondent.
------------------------------------------------------------------- X

07-CV-342 (ARR)

NOT FOR
ELECTRONIC OR PRINT
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Carl Madison filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to vacate his convictions in New York State court of, inter alia, several robberies and a homicide. Petitioner claims that (a) his right to counsel was violated by the admission of post-arrest statements made by him concerning a robbery and a subsequent robbery/homicide, because, at the time the statements were made, he had hired a lawyer to represent him in connection with the prior robbery, and (b) there was insufficient evidence to sustain his conviction of depraved indifference murder. For the reasons set forth below, the petition for a writ of habeas corpus is denied in its entirety.

## FACTUAL AND PROCEDURAL HISTORY

### A. Facts

On February 14, 2000, Detective Chinnici of the 102nd Precinct in Queens was assigned to investigate the robbery of one Bobby Seeram and his family. H. 72.[1] Seeram identified petitioner

---

[1] Citations to "H." refer to the transcript of state court evidentiary hearing conducted pursuant to People v. Huntley, 15 N.Y.2d 72 (1965), to determine the admissibility of petitioner's statements that are the focus of his current habeas corpus petition. Citations to "T."

as the perpetrator, and Detective Chinnici attempted to locate petitioner at his residence, to no avail. Id. at 74. On February 16, 2000, Chinnici was informed by one Deron Castro, Esq., that he represented petitioner and that Castro would take petitioner to the 102nd Precinct for questioning the next day, but petitioner did not show up. Id. at 76-77. According to petitioner's subsequent statements, petitioner had recently become addicted to crack and had embarked upon a crime spree to obtain money for drugs. Id. at 21, 26.

Late at night on February 17, 2000, petitioner approached one Louinel Pericles, who was exiting his car in his driveway, with the intention of robbing him at gunpoint. Id. at 28-29. Because Pericles had known petitioner for a number of years, he initially refused petitioner's demands for money, and petitioner hit him. Id. Pericles then entered his house and petitioner followed. After Pericles continued to refuse petitioner's demands for money, a struggle ensued in Pericles' bedroom during which petitioner struck Pericles repeatedly with his gun. During the course of the struggle, petitioner's gun went off, firing a bullet into the back of Mr. Pericles' head and killing him instantly. Petitioner fled the scene. Id.

On February 18, 2000, Officer Mark Lobel, a police officer from the 113th Precinct's Street Narcotics Enforcement Unit, was told to locate petitioner and bring him in for questioning in connection with the Pericles homicide. Id. at 56-58. Officer Lobel located petitioner at an address that was not his home address and handed him over to officers from the 113th precinct, id., who then took him to an interview room in that precinct. T. 971.

On February 19, 2000, petitioner was interviewed by a Detective Quinn of the 113th Precinct, who had been assigned to investigate the Pericles homicide. Detective Quinn first read petitioner

refer to the trial transcript. See Dkt. No. 8.

2

his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and petitioner indicated that he would be willing to give a statement to the police. H. 5-8. Detective Quinn left petitioner and did not return. Instead, a Detective Mecabe of the Queens Homicide Squad was brought in to question petitioner and, after a few cursory questions, obtained what amounted to a full written confession to both the Seeram robbery and the Pericles murder. H. 20-29. Petitioner also agreed to make a videotape confessing to these crimes. Id. 30-31.

Meanwhile, Detective Chinnici, who had been appraised that petitioner had been arrested in connection with a homicide, went to the 113th Precinct to file a police report relating his formal arrest of petitioner for the Seeram robbery. H. 76-77. Detective Chinnici did not speak to petitioner, nor did he recall speaking to any other officer in the 113th Precinct who had been involved in the interrogation of petitioner. H. 85, 90-91.

## B. Procedural History

Petitioner was charged, inter alia, with three counts of murder in the second degree, upon a theory of depraved indifference murder, and three counts of robbery in the first degree, including the Seeram and Pericles robberies.

### 1. The Evidentiary Hearing

In March of 2002, the Supreme Court of the State of New York, Queens County, held an evidentiary hearing pursuant to People v. Huntley, 15 N.Y.2d 72 (1965), to determine the admissibility of petitioner's statements to Detective Mecabe in light of the fact that petitioner had retained counsel in relation to the Seeram robbery. At the hearing, the officers involved in the questioning at the 113th Precinct, including Detectives Quinn and Mecabe, denied knowing that petitioner was wanted for the Seeram robbery, denied knowing that he had hired a lawyer in

connection with that crime, and even denied knowing Detective Chinnici. See H. 12, 37, 45. Detective Chinnici also denied recalling any communication with the officers from the 113th Precinct relating to the questioning of petitioner. See id. at 85.

By written decision dated July 25, 2002, the hearing court denied petitioner's motion to suppress the statements made to Detective Mecabe as well as the videotaped confession. See Mem. Denying Deft's Mot. to Suppress, at 2 (N.Y. Sup. Ct. Jul. 25, 2002) (hereinafter "Suppression Hearing Mem."). The hearing court analyzed the admissibility of petitioners's statements solely on the basis of New York state law and did not address, directly or indirectly, the applicability of the Sixth Amendment to the United States Constitution in making its determination. See id.

Under New York state law, a defendant's right to counsel attaches with respect to a crime when police officers know, or have reason to know, that the defendant is represented by a lawyer in connection with that crime, even if the defendant has not yet been formally charged with that crime. In addition, the New York state right to counsel, and the protections derived therefrom, also extend to all offenses that are considered by New York state law to be "related" to the crime for which a defendant has a lawyer. People v. Cohen, 90 N.Y.2d 632, 634 (1997). Moreover, if the defendant is in custody for a crime to which the right to counsel has attached, he cannot waive his right to counsel with respect to any matter, whether or not that matter is related to the crime to which the right to counsel has attached, in the absence of an attorney. See People v. Rogers, 48 N.Y.2d 167, 169 (1979). Under federal law, by contrast, a defendant's Sixth Amendment right to counsel attaches only upon the commencement of adversarial judicial proceedings with respect to an offense. Morever, an arrest does not itself mark the commencement of adversarial judicial proceedings. See generally Kirby v. Illinois, 406 U.S. 682, 689 (1972); Texas v. Cobb, 532 U.S. 162 (2001). In this

4

circuit, this is true even if the arrest is made upon a warrant obtained by filing a complaint. See United States v. Duvall, 537 F.2d 15 (2d Cir. 1976).

Thus, proceeding under state law, the hearing court reasoned that petitioner was, at the time he gave his confession, in custody for the Pericles murder, for which he was not represented, and not in custody for the Seeram robbery. See Suppression Hearing Mem. at 9. The court further stated that there was no evidence that the 113th Precinct officers knew that petitioner had committed the Seeram robbery when they began questioning him concerning the Pericles murder, much less any evidence that they knew he was represented by a lawyer in the Seeram robbery investigation. Id. The court also found that the two crimes, having occurred on different days and at different locations, were not interrelated so as to warrant the conclusion, under state law, that had petitioner's right to counsel attached with respect to the Seeram robbery, barring police questioning regarding that crime, his right to counsel would also bar questions with respect to the Pericles homicide. Id. at 10.

## *2. The Trial and Subsequent Appeals*

Petitioner was convicted by a jury of all charges and sentenced to consecutive terms of 25 years to life in prison on the homicide and robbery counts. He then filed a notice of appeal to the Appellate Division, Second Department.

In his appellate brief, petitioner, through counsel, argued that (a) because he was then represented in connection with the Searam robbery and the two crimes were "closely related", his right to counsel had been violated when he was questioned about both the Searam robbery and the Pericles homicide, and (b) there was insufficient evidence to sustain his conviction for depraved

indifference murder. See Brief for Defendant-Appellant, People v. Madison No. 2003-04515 at 20, 27 (N.Y. App. Div. Feb. 8, 2005) (Dkt. 8) (hereinafter Pet.'s Appellate Brief).

By decision dated October 17, 2005, the Appellate Division rejected petitioner's argument that the statements were obtained in violation of his right to counsel, noting that he was in custody for a crime for which he was not represented, that the two crimes were not "closely related" since they "occurred on different days and at different locations and involved different victims", and that he had knowingly and voluntarily waived his right to counsel. People v. Madison, 22 A.D.3d 684, 685 (N.Y. App. Div. 2005). The Appellate Division relied entirely on state law grounds for its decision. See id.

The Appellate Division agreed with petitioner, however, that there was insufficient evidence to sustain a conviction for depraved indifference murder, id. 686-87, and instructed the trial court to re-sentence him based on the lesser offense of manslaughter in the second degree, id. at 687. On November 16, 2005, the state trial court re-sentenced petitioner on the lesser charge of manslaughter in the second degree to a reduced sentence of 7.5 to 15 years in prison. See Sentence & Commitment Report at 1.

Petitioner filed an application for leave to appeal to the New York Court of Appeals, which was denied on January 13, 2006. See People v. Madison, 6 N.Y.3d 778 (2006). Petitioner then timely filed this petition for a writ of habeas corpus, raising the same two claims he raised in the Appellate Division. As noted, petitioner's challenge to his conviction for depraved indifference murder had already been sustained by the state court leading to petitioner's resentencing based on the lesser charged offense of manslaughter. The second habeas claim is therefore dismissed as moot.

## DISCUSSION

### A. Violation of Right to Counsel.

As a threshold matter, before considering a habeas petition on the merits, it must be established that petitioner's claim of violation of his right to counsel was exhausted in state court. It must be shown that the arguments on which petitioner relies were "fairly present[ed] [...] to the state courts in order to give the state the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights'." Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)); see also 28 U.S.C. § 2254(c).

It is not entirely clear from his habeas petition, which asserts only a purported violation of his "right to counsel", see Pet. at 3, whether petitioner is challenging the admissibility of his confession on both state and federal constitutional grounds. See Pet. at 3. Morever, apart from a single citation to the Sixth Amendment in a heading of his brief, see Pet.'s Appellate Brief at 20, petitioner did not rely on the Sixth Amendment to the U.S. Constitution in his arguments before the Appellate Division, and the Appellate Division's opinion made no reference to the federal claim.

Nevertheless, the Second Circuit has held that the exhaustion requirement may be satisfied by raising a claim before a state court that "calls to mind" an argument of a violation of a federal constitutional right. A habeas petitioner is not required to recite "chapter and verse of the Constitution" to meet the exhaustion requirement. See Daye v. Attorney General, 696 F.2d 186, 194 (2d Cir. 1982). Indeed, in Twitty v. Smith, 614 F.2d 325 (2d Cir. 1979), the Second Circuit held that a claim of ineffective assistance of counsel had been fairly presented to the state courts when the petitioner simply argued in his Appellate Division brief that he had been denied his right to "effective assistance of counsel." Twitty, 614 F.2d at 332. This was because, the circuit reasoned,

"[w]hile petitioner's new counsel did not expressly cite the Constitution or cite any authorities in support of these claims, the mention of 'effective assistance of counsel' instantly calls to mind the Sixth Amendment's guaranty of the accused's right to have the assistance of counsel." Id. (internal citations omitted). See also Jackson v. Edwards, 404 F.3d 612 (2d Cir. 2005) (reaffirming Daye's approach to determine whether an argument has been exhausted in state court).

In this case, as noted, not only did petitioner explicitly mention a violation of "his right to counsel" in the heading to Point I of his appellate brief, he directly cited to the Sixth and Fourteenth Amendments of the United States Constitution in that heading. See Pet.'s Appellate Brief at 20. Therefore, the court finds that the claim of violation of his federal constitutional right to counsel claim has been exhausted.

Even though this court may address petitioner's Sixth Amendment right to counsel claim on the merits, a well-established legal principle is fatal to petitioner's contention. As noted above, under the Sixth Amendment, the right to counsel does not attach with respect to a particular offense until a charging instrument has been filed against a defendant so that formal judicial adversary proceedings have begun as to that specific offense. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991); Kirby v. Illinois, 406 U.S. 682, 689 (1972). The Second Circuit has reiterated that the Sixth Amendment right to counsel is first implicated when a suspect is arraigned before a magistrate, and not when he is arrested, even if the arrest is the result of a warrant procured by the filing of a complaint with a judge. United States v. Duvall, 537 F.2d 15 (2d Cir. 1976); see also United States v. Vasquez, 675 F.2d 16, 17 (2d Cir. 1982) ("[f]or Sixth Amendment right to counsel to attach, adversarial proceedings must have commenced against an individual, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment") (internal citations omitted).

In this case, as of the time petitioner made the incriminating statements at issue, no complaint or indictment had been filed against him in either the Seeram robbery or the Pericles murder. See People v. Madision, 22 A.D.3d 684, 686 (N.Y. App. Div. 2005). Thus, although it is true that a defendant cannot validly waive his right to counsel absent counsel's presence when the Sixth Amendment right has attached, see Michigan v. Jackson, 475 U.S. 625 (1986), in this case, that right did not attach until after the challenged statements were made because, although petitioner had been held for questioning and arrested, he had not yet been formally charged with any offense.[2]

---

[2] Even if this court were to construe the claim as stating that the statements were obtained in violation of petitioner's right to counsel under the *Fifth* Amendment to the U.S. Constitution as established in Miranda v. Arizona, presumably because a pro se petition must be construed to raise the strongest argument it suggests, Weixel v. N.Y.C. Bd. of Educ., 287 F.3d 138, 145-46 (2d Cir. 2002), such claim would be procedurally barred and unexhausted because petitioner never argued in state court that his waiver of Miranda rights was anything but knowing and voluntary.

## CONCLUSION

For the foregoing reasons, the court denies the petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of his constitutional rights. See 28 U.S.C. § 2253. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See id. The Clerk of the Court is instructed to enter judgment accordingly.

SO ORDERED.

/S/
_____
Allyne R. Ross
United States District Judge

Dated: November 1, 2007
Brooklyn, New York

SERVICE LIST

*Pro Se* Petitioner

**Carl Madison**
# 03-A-4318
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902-0500

Attorneys for Respondent

**John M. Castellano**
Queens County DA's Office
125-01 Queens Boulevard
Appeals Bureau
Kew Gardens, NY 11415

**Johnnette Traill**
Queens County District Attorney's
125-01 Queens Boulevard
Kew Gardens, NY 11415